UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WALTER CHRISTIAN,

     Plaintiff,

vs.                                                                    Case No.:  3:23-cv-00231

T.K. WATERS, in his official capacity
as Sheriff of the Consolidated City of
Jacksonville, Florida; A.W. YOHN,
Individually; T.A. PRICE, Individually;
and A.B. MATTHEWS, Individually,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WALTER CHRISTIAN, sues Defendants, T.K. WATERS, A.W. YOHN, T.A. PRICE, and A.B. MATTHEWS, and alleges:

## JURISDICTION AND VENUE

1.    This is an action for damages, attorney's fees and costs, and is brought pursuant to section 768.28, Florida Statutes (2022), 42 U.S.C §§ 1983 and 1988, 28 U.S.C. §§ 1331 and 1343, and the Fourth and Fourteenth Amendments to the Constitution of the United States.  The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the events giving rise to Plaintiff's claims occurred within the Middle District of Florida.

3.     All conditions precedent to the claims asserted herein have been satisfied, including all conditions set forth in section 768, Florida Statutes and §§112.201-112.205.

## PARTIES

4.     Plaintiff, Walter Christian, is a resident of Chatham County, Georgia and a citizen of the United States.

5.     Defendant, T.K. Waters, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida.  In his official responsibility as Sheriff, Defendant Waters is responsible for the supervision, training, instruction, discipline, control and conduct of officers at the JSO and further makes policy for JSO with respect to the use of force.

6.     Defendant, A.W. Yohn, was, at all times material to the claims asserted in this action, a sworn member of the Jacksonville Sheriff's Office ("JSO") employed as a corrections officer at the John E. Goode Pre-Trial Detention Facility ("PTDF") in Jacksonville, Florida.  At all times material to the claims asserted in this action, Defendant, A.W. Yohn, acted in conformity with the customs, practices and/or policies of JSO and acted under color of state law.

2

7.     Defendant, T.A. Price, was, at all times material to the claims asserted in this action, a sworn member of JSO employed as a corrections officer at the PTDF in Jacksonville, Florida.  At all times material to the claims asserted in this action, T.A. Price, acted in conformity with the customs, practices and/or policies of JSO and acted under color of state law.

8.     Defendant A.B. Matthews, was, at all times material to the claims asserted in this action, a sworn member of JSO employed as a corrections officer at the PTDF in Jacksonville, Florida.  At all times material to the claims asserted in this action, Defendant, A.B. Matthews, acted in conformity with the customs, practices and/or policies of JSO and acted under color of state law.

## FACTUAL ALLEGATIONS

9.     In December of 2018, Walter Christian was involved in an automobile collision and sustained significant injuries to his back, neck and shoulders.

10.    On or about March 3, 2019, at 5:22 p.m., Mr. Christian was arrested for alleged violations of sections 784.041(2)(a) (Domestic Battery by Strangulation), 787.02(1)(a) (False Imprisonment) and 843.02 (Resisting Officer Without Violence).

11.    Shortly after being arrested, Mr. Christian was transported to the PTDF.

12.    At some point during the booking process, Mr. Christian was being escorted by A.W. Yohn from the nurse's station toward the booking area.

13.    While he was being escorted by Defendant Yohn, Mr. Christian was fully restrained in four-point restraints, with his hands cuffed in the front.

14.    While escorting Mr. Christian toward the booking area, Defendant Yohn was pulling Mr. Christian along by the chain that links the two handcuffs of the four-point restraints.

15.    Mr. Christian told Defendant Yohn about the injuries to his back, neck and shoulders, and stated he was not able to walk very quickly because of those injuries.

16.    Defendant Yohn then began pulling Mr. Christian even faster, twisting the chain connecting the handcuffs, and thereby twisting Mr. Christian's wrists in an effort to get Mr. Christian to move faster.

17.    Mr. Christian was in severe pain and unable to keep pace with Defendant Yohn, which caused Mr. Christian to fall to his knees.

18.    As soon as Mr. Christian fell to his knees, Defendant Yohn began striking him.

19.    Several other officers, including Defendant Price, joined with Defendant Yohn and began punching and kicking Mr. Christian.

20.    One of the officers twisted Mr. Christian's leg up behind his head and caused a significant knee injury.

21.     The officers ultimately dragged Mr. Christian to, and secured him in, a restraining chair, but they continued to beat on Mr. Christian even after he was strapped into the chair.

22.     No officers attempted to intervene at any time to prevent or stop the physical attack on Mr. Christian from occurring, despite knowledge of what was happening and the ability to intervene and stop the attack.

23.     After roughly an hour or so, Defendant Matthews released Mr. Christian from the restraining chair to continue the booking process.

24.     Defendant Matthews immediately became verbally abusive towards Mr. Christian, calling him names and laughing about how the other officers had physically attacked Mr. Christian.

25.     Mr. Christian replied, stating something to the effect of "yea…5 guys on 1…they're real tough."

26.     Defendant Matthews became visibly agitated by Mr. Christian's retort.

27.     Defendant Matthews then put Mr. Christian in a four-point restraint with the cuffs on so tight they were cutting off his circulation, escorted Mr. Christian into a holding cell, kicked his feet out from under him and slammed him down, causing Mr. Christian to strike his head on the metal bench along the wall.

28.     After being slammed, Mr. Christian attempted to stand up and Defendant Matthew slammed him on the floor again.

29.     A member of the medical staff ultimately loosed Mr. Christian's restraints.

30.     An investigation was ultimately conducted into the incidents involving Mr. Christian, and it was concluded that there was a lack of evidence to support Mr. Christian's assertion that the officers acted improperly.

31.     To Plaintiff's knowledge, no officers were reprimanded, disciplined or punished in any way for their role in the incident involving Mr. Christian.

32.     The use of force by Defendant Yohn, Defendant Price and Defendant Matthews is part of a longstanding practice by JSO of using and tolerating the use of force against individuals who are not acting violently or resisting.

33.     The incident involving Mr. Christian described herein occurred under former sheriff, Mike Williams, who was the immediate predecessor to the current sheriff, Defendant T.K. Waters.

34.     In his official capacity as sheriff, Mike Williams, was responsible for the supervision, training, instruction, discipline, control and conduct of JSO correctional officers and made policy for JSO with respect to the use of searches, seizures, arrests and the use of force.  At all times material to the claims asserted in this action, Mike Williams, had the power, right and duty to train and control

6

his officers, agents and employees to conform with the Constitution of the United States and to ensure that all orders, rules, instructions and regulations promulgated for JSO were consistent with the Constitution of the United States. At all times material to the claims asserted in this action, Sheriff Mike Williams, his agents and employees acted under color of law.

35.    Defendant T.K. Waters is the current Sheriff of the Consolidated City of Jacksonville, and he has not made any changes to JSO's longstanding practice of using and tolerating the use of force against individuals who are not acting violently or resisting.

36.    The longstanding practice by JSO of using and tolerating the use of force against individuals who are not acting violently, or resisting is an ongoing problem and has persisted at JSO under numerous sheriffs preceding the current sheriff, Defendant T.K. Waters.

37.    In December of 2005, a JSO officer slammed Sammy L. Evans causing his head to hit the ground with such force that Mr. Evans died.  Mr. Evans was being arrested for having an open container of alcohol and was not resisting.  The JSO officer was not disciplined, reprimanded or punished for the use of force against Mr. Evans.

38.    In January of 2006, a JSO officer broke the jaw of Bryan Barnes while effectuating his arrest.  The JSO officers struck Mr. Barnes despite the fact he

complied with all of their commands and did not resist while being arrested.  *See* Barnes v. Sheriff Rutherford, et al., No. 3:08-cv-217-J-33JRK (M.D. Fla. Jacksonville Division).  There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until COJ's Office of General Counsel sent a complaint to JSO in January of 2011.  This complaint and the accompanying investigation occurred four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit was settled.  The Internal Affairs Unit of JSO concluded that the charge of excessive force against the relevant officers be classified as **NOT SUSTAINED.**

39.     In January 2006, a JSO officer kneed Ronal Ferrara in the face three times while Ferrara was handcuffed.   The JSO officer involved was not reprimanded, disciplined or punished for their use of force against Mr. Ferrara.

40.     In October of 2007, two JSO officers and a civilian who was on a "ride along" rammed the head of Colin Runge into a steel door in the intake area of the jail.  At the time, Runge was fully secured and unable to resist the officers and civilian as he was in a total appendage restraint.

41.     In January of 2008, a JSO officer slammed Larue Perkins into the pavement of a parking lot, breaking his jaw.  At the time, Mr. Perkins was complying with the officer's directive to leave the parking area.  After having his

jaw broken, Mr. Perkins was falsely arrested.  Mr. Perkins filed a written complaint with JSO shortly after the January 2008 incident.  In January of 2011, almost three full years after the incident, the Internal Affairs Unit of JSO received a complaint from COJ's Office of General Counsel regarding the January 2008 incident involving Mr. Perkins.  The Internal Affairs Unit of JSO concluded that the charge of excessive force against the relevant office be classified as **NOT SUSTAINED.**

42.    In September of 2008, a JSO officer dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head, leaving him paralyzed.  The officer did so despite being warned by Mr. Lunsford that he had four screws and a plate in his neck.  *See* Lunsford v. Rutherford, et al., Case No.: 3:09-cv-01015-MMH-MCR (M.D. Fla. Jacksonville Division).  Despite actual notice of the incident because of the lawsuit filed against him, then JSO Sheriff Rutherford failed to conduct an internal affairs investigation into the incident.  The JSO officer involved was not reprimanded, disciplined or punished for their use of force against Mr. Lunsford.

43.    In May of 2010, a JSO officer fractured multiple bones in David Kemp's face when he violently struck Mr. Kemp while he laid on the ground in compliance with the JSO officer's command.  *See* Kemp v. Rutherford et al., Case No.: 3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division).  Despite actual notice of the incident because of the lawsuit filed against him, then JSO Sheriff Rutherford

failed to conduct an internal affairs investigation into the incident. The JSO officer involved was not reprimanded, disciplined or punished for their use of force against Mr. Kemp.

44.     In March of 2012, JSO officers questioned Kyle Fowler concerning a stolen vehicle. At the beginning of questioning, Mr. Fowler was told that he was free to go at any time. After initially agreeing to speak to the officers, Mr. Fowler told the officers he was not interested in speaking anymore and began to walk toward his gate. As he did so, the JSO officers knocked Mr. Fowler through a closed metal gate and onto the ground. The JSO officers then rolled Mr. Fowler onto his stomach, drove a knee into his back and violently pulled his arms behind him to handcuff him, injuring Mr. Fowler in the process of unlawfully arresting him. The charge on which Mr. Fowler was unlawfully arrested, resisting an officer without violence, was ultimately dismissed. The JSO officers involved in the incident were not reprimanded, disciplined or punished for their use of force against Mr. Fowler.

45.     In June of 2013, a JSO officer violently slammed Robert Slade ground causing him to strike his head, teeth and shoulder on the ground after he was involved in a minor traffic accident. Mr. Slade was slammed for merely asking the JSO officer when his insurance information would be taken down following the collision. Mr. Slade was then unlawfully arrested for resisting an officer without

10

violence.  The charges against Mr. Slade were ultimately dismissed.  The JSO officer involved in the incident was not reprimanded, disciplined or punished for the use of force against Mr. Slade.

46.    In November of 2014, a JSO officer violently slammed Deandre Ezell's head into a concrete wall at the PTDF.  Mr. Ezell was handcuffed at the time.  The use of force knocked Mr. Ezell unconscious and resulted in Mr. Ezell being hospitalized.  At the time of the incident, Mr. Ezell was a minor.

47.    In July of 2015, JSO officers punched Kelli Wilson in the face after she refused their unlawful commands to hand over her cell phone.  The JSO officers proceeded to violently take Ms. Wilson to the ground, pulling her hair and attempting to rip her arms out from under her.  Ms. Wilson was then arrested for resisting without violence.  The charge against Ms. Wilson was ultimately dismissed.  The JSO officers involved were not reprimanded, disciplined or punished for the use of force against Ms. Wilson.

48.    In April of 2016, JSO officers violently attacked John Blessing while effectuating his arrest.  The force used by the JSO officers caused Mr. Blessing to lose 75% of the function in his arm.  Mr. Blessing was arrested for resisting without violence, disorderly intoxication and battery.  The charges were ultimately dropped after the presiding court found the arresting officer failed to investigate

the alleged crime or establish probable cause.  The JSO officers involved were not reprimanded, disciplined or punished for their use of force against Mr. Blessing.

49.    In April of 2016, Mayra Martinez was at her place of employment when JSO arrived after calls that Ms. Martinez was intoxicated.  JSO officers slammed Ms. Martinez into the pavement and punched her numerous times. Upon arrival at the PTDF, JSO officers punched Ms. Martinez with closed fists in her stomach, chest and face, knocking her unconscious.  Ms. Martinez was handcuffed throughout the incident at the PTDF.

50.    In April of 2017, Connell Crooms was participating in a peaceful protest at James Weldon Johnson Park, formerly Hemming Plaza Park, when a counter-protestor reached his arm over the shoulder of a JSO officer and stuck his middle finger in Mr. Croom's face.  Rather than apprehend the aggressor, JSO officers threw Mr. Crooms to the ground, struck him repeatedly in the back and face and tased him in the back, causing Mr. Crooms to lose consciousness and resulting in his hospitalization.  Mr. Croom is deaf and did not resist or disobey any of the officers' commands.  The JSO officers involved were not reprimanded, disciplined or punished for the use of force against Mr. Crooms.

51.    In April 2017, Daniel Nyman was seeking treatment at UF Health Jacksonville when a JSO Officer spat at Mr. Nyman, charged at him, threw him to the ground, shoved his jaw into the ground and then flipped Mr. Nyman over and

kneed him in the back.  Mr. Nyman required repair of his previously broken jaw and spent five days in the hospital as a result  of the attack.  The JSO officer involved in the incident was not reprimanded, disciplined or punished for the use of force against Mr. Nyman.

52.     In June of 2017, Jonathan Williams was pulled over by JSO Officers. The officers placed one handcuff on Mr. Williams before punching him twice in the face despite the fact he was not resisting.  The JSO officers proceeded to throw Mr. Williams to the ground, punching him in the back and kneeing him in the head.  Mr. Williams suffered fractures in the right orbital wall, left inferior and medial orbital wall of his skull, as well as soft tissue swelling and a hematoma on the back of his head.   The JSO officers involved in the incident were not reprimanded, disciplined or punished for the use of force against Mr. Williams.

53.     In November of 2017, a twelve-year old child, D.M. III, was walking home from school when JSO officers approached the young boy.  When he did not comply with their request to stop and instead continued walking to his mother, JSO officers slammed him on the ground.  D.M. III suffered numerous fractures, a cervical strain, and a sprain.  The JSO officers involved in the use of force were not reprimanded, disciplined or punished for the use of force against D.M. III.

54.     Based on the foregoing, JSO has a practice, custom and/or policy of failing to adequately investigate, reprimand, discipline or punish its officers for their use of excessive force.

**COUNT I**
**42 U.S.C. § 1983**
**MUNICIPAL LIABILITY**
**(Defendant T.K. Waters)**

55.     Paragraphs 1 through 54 are hereby realleged and incorporated by reference herein.

56.     There is a documented history within the JSO of the widespread use of excessive force by JSO officers, of allowing such use of excessive force to continue without consequences for the officers involved in such use of excessive force and a failure to take steps to diminish incidents of the use of excessive force.

57.     Defendant Waters' predecessor, former Sheriff Mike Williams, his officers, agents and employees, acting within their authority and under color of state law, instituted and followed customs, practices and policies which directly resulted in the use of excessive force against Mr. Christian and is therefore actionable under 42 U.S.C § 1983.

58.     By failing to discipline officers for the use of excessive force against Mr. Christian, former Sheriff Mike Williams, ratified his officers' decisions and reasons for those decisions, thus constituting a policy, custom and/or practice.

Alternatively, the officers involved in the incident were the final policy makers for former Sheriff Mike Williams, as their decisions were not immediately or effectively reviewable.

59.    Additionally, former Sheriff Mike Williams, failed to adequately train his officers, agents and employees with respect to the proper use of force despite a clear and obvious need for such training, reflecting a deliberate indifference to the constitutional rights of Mr. Christian, thus constituting a custom, practice and/or policy of failing to adequately train, investigate, supervise and/or discipline officers for their use of excessive force.

60.    Defendant Waters is the current Sheriff of the Consolidated City of Jacksonville, and he has not made any changes to JSO's longstanding practice of using and tolerating the use of force against individuals who are not acting violently or resisting.

61.    As a direct and proximate result of the actions and/or inactions of Defendant Waters and his predecessors, Mr. Christian has suffered damages, including, but not limited to, physical injury, severe pain and suffering and severe emotional and psychological distress.

WHEREFORE, Plaintiff, WALTER CHRISTIAN, demands judgment against Defendant, T.K. WATERS, for actual and compensatory damages, costs, attorney's fees and any further relief this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983
## UNREASONABLE SEARCH AND SEIZURE:USE OF EXCESSIVE FORCE
### (Defendant A.W. Yohn)

62.     Paragraphs 1 through 54 above are hereby realleged and incorporated by reference herein.

63.     Defendant Yohn's actions in twisting and pulling Mr. Christian's cuffs, punching and kicking Mr. Christian, twisting and pulling Mr. Christian's limbs while he was fully restrained in a four-point restraint and then continuing to physically attack him after he was secured in a restraining chair constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

64.     The acts and/or omissions described above were undertaken by Defendant Yohn with willful, wanton, callous and knowing disregard for the clearly established rights of Mr. Christian to be free from unreasonable searches and seizures.

65.     As a direct and proximate result of the unlawful actions of Defendant Yohn described herein, Mr. Christian has suffered damages, including, but not limited to, physical injuries, severe pain and suffering and severe emotional and psychological distress.

WHEREFORE, Plaintiff, WALTER CHRISTIAN, demands judgment against Defendant, A.W. YOHN, for actual and compensatory damages, costs, attorney's fees and any further relief this Court deems just and proper.

**COUNT III**
**42 U.S.C. § 1983**
**UNREASONABLE SEARCH AND SEIZURE: USE OF EXCESSIVE FORCE**
**(Defendant T.A. Price)**

66.     Paragraphs 1 through 54 above are hereby realleged and incorporated by reference herein.

67.     Defendant Price's actions in punching and kicking Mr. Christian, twisting and pulling Mr. Christian's limbs while he was fully restrained in a four-point restraint and then continuing to physically attack him after he was secured in a restraining chair constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

68.     The acts and/or omissions described above were undertaken by Defendant Price with willful, wanton, callous and knowing disregard for the clearly established rights of Mr. Christian to be free from unreasonable searches and seizures.

69.     As a direct and proximate result of the unlawful actions of Defendant Price described herein, Mr. Christian has suffered damages, including, but not

limited to, physical injuries, severe pain and suffering and severe emotional and psychological distress.

WHEREFORE, Plaintiff, WALTER CHRISTIAN, demands judgment against Defendant, T.A. PRICE, for actual and compensatory damages, costs, attorney's fees and any further relief this Court deems just and proper.

<u>**COUNT IV**</u>
<u>**42 U.S.C. § 1983**</u>
<u>**UNREASONABLE SEARCH AND SEIZURE:  USE OF EXCESSIVE FORCE**</u>
**(Defendant A.B. Matthews)**

70.    Paragraphs 1 through 54 above are hereby realleged and incorporated by reference herein.

71.    Defendant Matthews' actions in securing Mr. Christian's cuffs too tight and kicking and slamming Mr. Christian onto the floor and bench of a holding cell while he was fully restrained in a four-point restraint constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

72.    The acts and/or omissions described above were undertaken by Defendant Matthews with willful, wanton, callous and knowing disregard for the clearly established rights of Mr. Christian to be free from unreasonable searches and seizures.

73.     As a direct and proximate result of the unlawful actions of Defendant Matthews described herein, Mr. Christian has suffered damages, including, but not limited to, physical injuries, severe pain and suffering and severe emotion and psychological distress.

WHEREFORE, Plaintiff, WALTER CHRISTIAN, demands judgment against Defendant, A.B. MATTHEWS, for actual and compensatory damages, costs, attorney's fees and any further relief this Court deems just and proper.

**COUNT V**
**STATE LAW CLAIM**
**BATTERY**
**(Defendant T.K. WATERS)**

74.     Paragraphs 1 through 54 above are hereby realleged and incorporated by reference herein.

75.     Defendant, A.W. Yohn, actually and intentionally struck Mr. Christian against his will and without legal justification.

76.     Defendant, T.A. Price, actually and intentionally struck Mr. Christian against his will and without legal justification.

77.     Defendant, A.B. Matthews, actually and intentionally struck Mr. Christian against his will and without legal justification.

78.     Former Sheriff Mike Williams, acting in his official capacity as Sheriff of the Consolidated City of Jacksonville, gave his officers the authority to use force against Mr. Christian.

79.     As a direct result of Defendant Yohn, Defendant Price and Defendant Matthew's battery and abuse of authority, Mr. Christian suffered damages, including, but not limited to, physical injury, severe pain and suffering and severe emotional and psychological distress.

80.     Defendant Waters, as the current Sheriff of the Consolidated City of Jacksonville, has not changed the policy of his predecessor Sheriff Mike Williams, and is therefore liable to Mr. Christian for his damages.

WHEREFORE, Plaintiff, WALTER CHRISTIAN, demands judgment against Defendant, T.K. WATERS, in his official capacity as Sheriff of the Consolidated City of Jacksonville, for actual and compensatory damages, costs and any further relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable.

Dated this 28th day of February, 2023.

**Willis ·Lucas Law Group, P.A.,**

/s/ Jonathan B.B. Lucas
**David H. Willis /** Fla. Bar No.: 48820
E-mail: david@willislucaslaw.com
**Jonathan B.B. Lucas /** Fla. Bar No.: 89823
E-mail: jonathan@willislucaslaw.com
Willis · Lucas Law Group, P.A.
320 First Street N., Suite 613
Jacksonville Beach, FL 32250
**Pleadings to**: service@willislucaslaw.com
(904) 270-8707 (Office)
Attorneys for Plaintiff